All right, the next case we're going to hear is United States v. Raza, and Mr. Eaton, whenever you get ready, we'll hear from you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, I'm Jeffrey Eaton, arguing on behalf of both defendants. Your Honor, we raised three independent instructional errors below. I'm going to devote the bulk of my time today to talking about one, the obstruction on materiality. I'll address our other two arguments as time permits. Your Honor, the wire fraud convictions of all four defendants have to be reversed because they're based on a jury instruction that was fundamentally inconsistent with the governing law on the issue of materiality, as expressed most recently by the Supreme Court in the Escobar case last year. By instructing the jury that materiality was to be determined from the perspective of a person or a reasonable person without reference to the particular person to whom it was directed, the district court allowed the jury to find the representations material without regard to whether they were material to the person who, in fact, received them. And that was error under the governing standard under Escobar and a series of cases that preceded it. Since about 1988, Your Honor, the Supreme Court of the United States and this Court have consistently said that the standard for determining materiality under federal fraud statutes is that a representation is material if it has a natural tendency to influence or is capable of influencing the decision of the decision-making body to whom it was addressed. If there were doubt that that standard were a decision-maker-specific standard, it was dispelled in the Escobar case. There, Your Honors, the Supreme Court, a unanimous Supreme Court, I should add, makes it clear that materiality under any standard, according to the Supreme Court, looks to the effect of the statement on the likely or actual behavior of the recipient. Well, here the Court said that a material fact is a fact that may be of importance to the reasonable person in making the decision about the particular matter or transaction. Facts of material are important to the matter in question when they are made and used with the intent to defraud. And it seems to me we said and would and so did the Supreme Court say materiality is a common law element that's been put in and it's the reasonable person in that circumstance who would have found it important and it's not a subjective standard. Your Honor, I think the Court said it three or four times throughout. If you read the whole things, a statement or representation is material if it has a natural tendency to influence or is incapable of influencing decision or action. The decision or action it talks about is the decision to defraud by obtaining money by property by false or material pretenses. It said that two or three times. Your Honor, that particular language is actually an interesting thing about Escobar. That particular language is actually taken from the False Claims Act statute, which is rare in the federal fraud context and it defines materiality specifically. That statutory definition actually doesn't include the decision-maker language that has marked the Supreme Court's language on this issue. We said in Wolf a test for whether a false statement to a bank is material is an objective one. It does not change from bank to bank. Materiality in the bank fraud context is an objective quality unconcerned with the subjective effect that defendants' representations actually had upon the bank's decision. You did say that in Wolf, Your Honor, as we explained in our response to the government's 28-J letter. The Supreme Court supports that, too. Forgive me, Your Honor. Go ahead. As we said in our response to the 28-J letter on Wolf, the issue of what the correct standard is was not presented there. The language that you, Your Honor, are quoting is dicta on top of the holding, which was merely that certain kinds of evidence are admissible under the reasonable person standard that was unobjected to apply. This is the Supreme Court, which applied the restatement materiality. I disagree that it implied that standard, but go on. A reasonable man would attach importance to his existence or nonexistence in determining the choice of action in the transactional question. And it said in the text, it says, it's not an element of defense. It comes from the common law, and it's always been there, and quoted that as the standard. I must say, a jury sitting there listening to this instruction knows that the statement had to be material, had to be influential, it had to affect the decision-making, and the court said it two or three times throughout. You have to read the whole instructions together. You pull out a little quote here and a little quote there. No, Your Honor, the jury reading the district court's instruction could have decided the following. They could have decided that even though the defendants mounted plenty of evidence to show that these kinds of representations were not capable of influencing SunTrust mortgage, they could have decided to convict them anyway because they could have decided that a reasonable person would not have gone the way SunTrust did. That's why the Supreme Court said it's a reasonable standard. It's not a question of whether SunBank was oversensitive or undersensitive. It's a question of whether a reasonable bank in that circumstance could be influenced, capable. Your Honor, you have to look at what the Supreme Court actually said. I don't know where else we go. Netter, in fact, is the original wire fraud case to specify the decision-maker-specific standard, Your Honor. In Escobar, you have to look at what the court actually did. It does discuss the restatement. It also discusses Williston. It discusses the restatement of contracts, the restatement of torts, and a variety of old New York State cases. If you read that in context, it seems to me quite clear that it's just background on the development of the law of materiality. What the court actually says and does is very, very important in Escobar, because it's just not consistent with a pure reasonable person standard. The language I quoted before, the court says under- Just getting to the heart of this, the statute doesn't have materiality in it. That's correct. The Supreme Court says that they assume that Congress intends to incorporate the well-settled meaning of the common law term it uses. And then they drop a footnote. They say, the restatement instructs that a matter is material if a reasonable man would attach importance to its existence or nonexistence in determining the choice of action. It seems to me we applied that in Wolfe, and we can't overrule Wolfe. Your Honor, again- Our Fourth Circuit opinion came out this recently. You don't need to overrule Wolfe, Your Honor, because as I said before, the question at issue here was not presented there. That language is dictum. Secondly, Your Honor, Wolfe was argued and briefed, at least briefed, prior to the Escobar decision. It's not cited in the decision. It's not cited in any of the briefs, and there were no 28J letters filed on it. So I don't think we can conclude from Wolfe that this court has considered the impact of Escobar on its jurisprudence on materiality. There are these cases from the Ninth Circuit and the Seventh Circuit, right, that come up in a different posture. It's about whether evidence will be admissible as to the practices of this particular bank. But both of those courts, when the issue does seem like it was presented squarely there, both of those courts say you can't bring in the evidence because it's a reasonable bank standard, not this particular bank standard. Are you asking us to break with those cases? It's distinguishable and doesn't matter that they were before Escobar. Well, with respect to the Seventh Circuit case, which is Betz-Gaston, that's another case in which the issue of how Escobar applied simply was not addressed by the parties or the court. I think it is not consistent with Escobar. So I think to the extent that that case didn't deal with Escobar, I think it's fair to conclude, or that this court at least can conclude, that it's not persuasive in this regard because it didn't address what we regard to be the central Supreme Court case on the issue. You think Escobar is a really big deal. In the Ninth Circuit case, Your Honor, the Lindsay case, I agree with you that the issue was more squarely presented there. It was remanded to the Ninth Circuit to deal precisely with the Escobar question. And what the Ninth Circuit did there, well, it did a couple of things. For one thing, it actually cites the decision-maker standard as the standard. That's what it says. It doesn't say it's a reasonable person standard. It cites the standard that we asked for in our jury instruction. Secondly, it acknowledges as it must that in the false claims context, which is the context of Escobar, that the decision-maker standard means what it says. In Escobar, what the Supreme Court says is what matters is what matters to the recipient. We have to look at the conduct of a particular decision-maker in this case and figure out would it have been material to that person, that body, whatever it happens to be. And Lindsay acknowledges that that's the case in false claims. But then, frankly, out of whole cloth, creates a division between the False Claims Act context and the Wire Fraud context, stating that, well, materiality in the False Claims Act context means one thing. And materiality in the Wire Fraud context means something completely different. There, the same standard applies to the decision-maker standard. But in the Wire Fraud context, you don't look to the actual decision-maker. You look essentially to everybody else, which just isn't consistent with the standard in Escobar. Nothing in Escobar suggests that, in fact, false claims is different than any other context. In fact, the Supreme Court's been quite consistent that across the context of federal fraud statutes, materiality is the same standard. So there's really no basis for the division that the Ninth Circuit made, and I think it's wrong. Can I ask you a question about sort of what difference it made? As I understand the defense theory, I'm totally oversimplifying, though. It's that SunTrust in particular just didn't care about income and assets, right? It didn't matter. They were selling the loans on the secondary market, so it just – this information wasn't material to them. But if SunTrust doesn't care, if the income and assets are not capable of influencing the loan approval decision, what was the point of falsifying the documentation? I just never understood this. For whose benefit were the false documents if SunTrust doesn't care? Your Honor, there are circumstances in which what's put into that application may matter to the borrower, if the borrower is seeking a particular kind of loan, for example. And more importantly, the applications had to be filled out. They're required not – in fact, it's not actually a SunTrust form. It's a federal form required by Fannie Mae and Freddie Mac. Yeah, but they could have put in the truth data. It didn't make any difference. They put in falsified W-2s and this type of thing. They did, Your Honor. We're not appealing those aspects of the district court's decision. That's true. But, again, materiality doesn't depend on what the defendants thought was important. It depends on what SunTrust thought was important. What Your Honor brings up goes to intent, not to materiality. So, really, I'm just trying to make common sense out of this. So the idea would be, well, these defendants, at the time, they thought SunTrust maybe cared about this, so that's why they falsified the information. There's no evidence on that issue, Your Honor. Well, I'm just trying to make sure. Sure. Right. Okay. All right. Sure. But the evidence from the, remember, the only one witness testified in this case who had personal, direct knowledge of SunTrust underwriting practices at that time, Terry Doherty. And Terry Doherty said, essentially, without contradiction, that SunTrust didn't care. I mean, I think she actually literally said, nothing in those applications mattered to SunTrust. That's pretty close to a direct quote. We approved everything that came in. All the bank cared about was the FICO score and the LTV score. And take a step back and realize that that was not an insane thing to think. People at that time, wrongly, as it turned out, believed that those two standards, in fact, this originally came from Fannie Mae and Fred Mack who were trying to expand homeownership, but that's another story, that the FICO score and the LTV were better proxies for creditworthiness than the traditional measures of creditworthiness, in fact. So it really didn't matter to them. They got the FICO score, they got the LTV score, and all of these applications had that. Well, actually, it's not in the application, but they all met the criteria. And it really didn't matter. It really could not have influenced their decision. Can I say something? You know what happened in trial way better than I did, so let me ask you this. It does seem like this was kind of the whole defense theory. Maybe a reasonable bank would have cared, but SunTrust didn't. It was a very important part of our presentation, yes. And then you argued it. It was argued in the closing argument? It was. And then did the government sort of respond in its closing argument? The government did. I believe this is in our brief. They said that what SunTrust thought about, cared about, didn't matter. They said it was irrelevant. And, in fact, just to make it worse, the judge himself said in front of the jury when we were putting on territory, he said, we don't want to know what's going on at SunTrust. We want to know what goes on that's relevant to this case, which amounts to an instruction to the jury to ignore all of our evidence. So if Your Honors agree that Escobar is the standard, this absolutely has to happen. Did you object to the judge saying that? We did not, Your Honor. So we have not raised that as an independent error. It goes to prejudice. But you're not arguing, right? There's no – it doesn't seem to me that you're arguing that, like, you really got sandbagged when you didn't get this instruction, that everyone let you put on this entire defense, and then when you asked for the instruction, that would have allowed the jury to give effect to it. No, never mind. Yes, and that's a fair characterization, Your Honor. In addition, as was Judge Hilton's practice at the time, he didn't tell us what the instructions were going to be before he gave them. He did what? He did not present us with what the instructions were going to be before he gave them to the jury. So we, in fact, didn't know. You object to that? We did not, Your Honor, so we haven't raised that. Well, what you have to do, I think under the rule, you have to object at least before they go to the – Well, we objected to the instructions. Before the jury started deliberating, did you object after they were given? Yes, we objected to the instructions themselves. There's no question about preservation. Before they were given or after they were given? After. Or both. Because we didn't know what they were going to be. What did you object to? Okay, you objected after they were given. Yes, there's no question. I think that's consistent with the rule. That's absolutely consistent with the rule. Sometimes you have a conference before and they give you two shots at it. I raise that, Your Honor, merely to answer the judge's question about how were we prejudiced. We have not raised independent – He did what he did here. Did you drive a case? I did not, Your Honor. Senior Honors, as I – to pick up where I left off, I think the evidence at trial on the question of what Suntrust, what would have been capable of influencing Suntrust, is at a minimum sufficient that a jury could have concluded that it wasn't material for them. And if that's right under this standard, this has to go back. Your Honor, I'll reserve the vote. You have rebuttal time. Mr. Hammond. Good morning. May it please the Court, I'm Jack Hanley, and I'm here with co-counsel Joseph Capone. The two of us did try the case. Good morning. We agree with the points that you were raising on materiality. It's clear from – You agree with the points that Judge Nemar raised, is that what you're saying? Yes. You don't agree with what points your opponent – No, I – Yeah, I'm sorry. I wouldn't – yeah. Definitely with what Judge Nemar was raising, which is the Supreme Court made clear in Escobar that the reasonable person standard applies. Yes, they talked about the government as a decision maker, but the government doesn't make decisions. People make decisions on behalf of the government. If you get into a case, you would use the reasonable person in the government position. Maybe it's a reasonable contracting officer. Maybe it's a reasonable program manager. Well, it didn't purport to overrule Netter either. It did not. It did not, but as you look at the recent cases that have come out of this court that cited Wolff and Betz-Gaston from the Seventh Circuit and Lindsay from the Ninth Circuit, they applied the reasonable person standard to a group of decision makers. If you think it's correct, why should you argue a harmless error? Just in case it wasn't correct. Those cases came out afterwards. The government wasn't sure where the courts would be coming out, whether it would be reasonable lenders or whether it would be the actual reasonable person at the decision maker. I don't understand your position. Even in your brief, you say you agree that the court – I've never understood from whatever the original way this came up to us was the stay pending appeal, right? I can't get my hands around the government's position, and even in your brief you do say that you agree that district court could have put in language relating to the actual decision maker, but it was an error not to. It's kind of clear enough. Correct. So, well, if it would be correct to put in language saying it goes to this decision maker – I don't think it would be correct any longer. At the time we wrote our brief, Betz-Gaston, Wolff, and Lindsay, as amended, had not come out. Okay, but you think it would have been a fair reading of Escobar to put it in? It might have been. Because that's how I read Escobar, too. I read it might have been a fair reading to say reasonable person in the position of the government, and we thought it might have been correct to say a reasonable person at SunTrust, not just SunTrust the institution, but a reasonable person making the decision at SunTrust. And we would have been happy with that instruction, even though it was more pro-defense than it needed to be. Did you all agree to bond pending appeal? We did not. You did? We opposed it. But they had that. They were granted bond pending appeal, yes. They were granted bond pending. We opposed that. But you opposed it, okay. Yes. And in your papers at that time, did you say that the standard is reasonable person and not the particular decision maker? Because I thought you argued it differently back then. I think I'm sure we put reasonable person in there as well, but I'm sure we said even with a reasonable decision maker, there's still not a problem. The case is still overwhelming, which we believe it was. The only decisions made in this case were on lending, and I think Your Honor brought that up. This isn't a case where there's – they cited a couple of cases lit back in this mail where there's two decision makers, and so then you have to make distinctions in jury instructions. The only decisions in this case were the decisions on lending. So when Judge Hilton said a reasonable person making a decision on a particular matter, he's basically saying a reasonable person making a decision on the lending. That's the same thing as saying reasonable lender. We were happy. A reasonable person making a decision on a lending decision is a reasonable lender. I'm sorry. I read your briefs earlier and your footnote in this brief as suggesting that it would have been correct to say the particular decision maker to which the statement was addressed. I think we said that might have been correct, yes. We now say it wasn't correct. But the reason we argued harmless error was in case that was correct, we still thought there was no error because Judge Hilton's instructions were correct. So you have changed your position in light of Lindsay and the Seventh Circuit case and Wolfe? And Wolfe, yes. But not in light of any Supreme Court decision? You've changed your position? I'm trying to figure out – Yes, we now think their argument that it should have been a – that it should have addressed SunTrust, the instruction, was incorrect. It's not a decision by the actual decision maker. The whole instructions, the court did focus on SunTrust and said it was the borrower. Correct. When it's doing the interstate commerce business. And it did say that the statute required making a false statement to a person for the purposes of obtaining money. Correct. And then the materiality comes from the common law. It says where the statement is sufficiently important. It talks about the gravity or the level of it. And, of course, there's an intent aspect that the court also addressed, which it means it has to have some element of deceit or cheating in the case. So when you put these together, you're focusing on SunTrust. I mean, that's all the jury can be heard of me talking about. But there still is the notion that they didn't – the court didn't overrule Nader and that it has to be – you can't just take some wild subjective expectation of the person. It has to be somewhat objective. We agree with that. We believe that in this situation, the judge's instructions were completely correct. Do you withdraw your harmless error assertion then? Do not. You do not? No. Can we go back to Nader? I don't understand. Excuse me? I said plant your feet. Who has plants for feet? Well, I think maybe you should stick with harmless error because Nader says it's material, and this is in the text of Nader, a natural tendency to influence or capable of influencing the decision of the decision-making body to which the statement is addressed. And then Escobar says you measure the effect on the actual or likely behavior of the recipient of the alleged misrepresentation. I mean, I just don't see that as particularly unclear. It does seem – As particularly what? pretty clear that you're supposed to ask whether the particular recipient of the statement, the allegedly false statement, whether it would have been material as to that recipient, which is what I understood you to be saying in your brief, that that would be correct, that that would absolutely have been a correct instruction, but this one was kind of close enough to that. Well, I think, as I said, I think it would be a reasonable person making the decision. The Supreme Court hasn't abandoned reasonable. As I just said, that reasonable person making the decision is not the same as what I just said, and I was reading from Supreme Court decisions. You're correct. I think there's some inconsistency there in Escobar. I would say it appears to be some, but you can't ignore the whole part of Escobar that talks about the reasonable person standard as part of materiality. So it's a reasonable person in the position of the decision-maker. I think when they're talking about reasonable person, they're talking about more how important does it have to be, not the audience. And I don't see how you can ignore the whole part of Escobar that says we have to look at the actual behavior of the recipient of this information. Why would that behavior matter if it was just an objective standard? Well, I believe it is. All the courts, including this one, have called it an objective standard. If all that matters is what a reasonable person would have done with this information, why would it possibly be relevant what this particular person did? It's not relevant what the particular person did. You said it's extremely relevant. Really? You have to look at the actual behavior of the particular person. I think they say the particular decision-maker. Yes. And the particular decision-maker in Escobar is not just the government. Just like in this case, it's not just SunTrust. So you agree. It has to be the person in that position. It's the person in that position. Materiality is measured. No, it's not. I think it would be a reasonable person in that position, in the decision-maker's position. But I'm just going to give you one more chance. If you can explain to me why, if that's the standard, Escobar would have cared what the actual recipient of the information did with it. If all that matters is what would a reasonable decision-maker have done with it, who cares what this decision-maker did with it? Why is that relevant? And not only relevant, Escobar said it's crucial. Yes, but all those things are the circumstances that go to the circumstances of making the decision. But, again, it's a reasonable person in that position. So I look at it as those are the circumstances. In this case, the court sort of did focus on the particular transaction. In this case, the court said a material fact is a fact which may be of importance to a reasonable person in making a decision about a particular matter or transaction. Now the term false or fraudulent pretense representations or promises includes actual, as well as half-truths, and includes a knowing concealment of facts that are material or important to the matter in question that were made or used in the intent of the fraud. So the court focuses on the particular transactions, the matter in question, and the particular decision. And then later it explains that it's influencing the decision or action, that it's material in making that decision or action. It didn't emphasize the reasonableness. I think the reasonable standard is still left after Escobar, but although I acknowledge this tension that is being talked about because you need to bring it home, but that may just be an evidentiary observation as opposed to the instructional observation. I see it as a difference between it has to be a reasonable person, the decision maker, though they're talking about that because certain circumstances do affect materiality, but it doesn't mean that the person making the decision has to be the actual decision maker. It's focusing more on the decision of whoever's making that decision, which would be the reasonable person. That's the way I read those two aspects of Escobar. I don't read the Supreme Court as abandoning common law about a reasonable person standard. I think that would be a major, major break from all prior Supreme Court cases and lower court cases say that you're abandoning the reasonable person standard. So I think they're focusing on the decision maker as circumstances which would affect the decision by a reasonable person in that position. Well, that argument suggests what I just observed is maybe it's evidentiary discussion as opposed to the standard. The evidentiary is you focus on the person's making the decision and not on some bank down the street which would have made a different decision. Correct. We would agree with that. Because I don't have any other time, I'm going to address the second argument, and the second argument I think goes exactly to the point that Judge Harris brought up, which is the judge said deceive or cheat, and the only thing that that deception or cheating could go to is trying to obtain the loan. There's no other possibility as to why there was any deception or cheating in this case except to obtain the loan. Once the loan is obtained, then that's the crime. The crime is completed. So that's the only reason they were deceiving was to get the loan, and that makes this case the same as Chandler. So we believe that the judge said enough about materiality during his wire fraud instructions to say that this was deceiving or cheating regarding getting money or property, but even if it wasn't, this is a case where there would be harmless error because the only reason they were trying to deceive or cheat was to obtain a loan. Are we talking about the intent instruction now? Yes. And you're arguing that that instruction was correct? I'm arguing first. I thought you were conceding that it wasn't correct. Oh, excuse me. On the intent instruction, we're arguing that the judge was correct with all of his instructions. Including intent? Yes, because he did also say in his wire fraud instruction, which was at about the same time, that materiality meant with an intent to deceive, to cause somebody to make a decision on giving up money or property. I'm sorry. Maybe I'm just not quick enough. I thought the district court instructed on the intent element that you needed either an intention to deceive or an intent to deprive another of a thing of value and did it in the disjunctive when, in fact, you need both. That's correct. And by itself, that would be an error. But that's the exact instruction that Wynn approved. Excuse me? That's the exact quote from Wynn that was approved by our court in Wynn, W-Y-N-N. Yes. The court said, the plan to defraud the scheme or plan to obtain money or property may be a separate violation of the wire statute. To act with intent to defraud means to act knowingly with the intention or purpose to deceive or cheat. An intent to defraud accompanied ordinarily by a desire or purpose to bring about some gain or benefit to oneself or some other person or by desire to cause some loss to the same person. That, to me, is directly out of our cases. I believe so. But by itself, without the last part that Your Honor had about the purpose to obtain money, and I think in this case the judge also said that around the same time he's defining intent to defraud, he says it has to be reasonably to influence a person to part with money or property. And so I think what Judge Niemeyer just cited, he pieced it all together and it was a sufficient instruction. By itself, Shaw says that was not a correct instruction. I just want to make sure we're all on the same page on that. And so if it was just Shaw by itself, and the reason we are, again, argue harmless error is, as I said in Shaw, they were mandated for harmless error analysis. It would be like in Chandler where there is harmless error both because of the weight of the evidence but also because, as Beriano, a case out of this court, said, that by the jury finding an intent to deceive, which they did, they were told they had to find that minimum, the only reason they would have intended to deceive was to obtain the loan. These were loan applications to get the underwriters to approve the loans. The underwriters were the only ones deciding these decisions, and they were the ones requiring the false documents, which they got, and then they approved the loans. I understand the harmless error argument. I just have more trouble understanding the no error argument. The reason why we distinguish or say that Shaw is not necessarily applicable is because of the other instruction that Judge Niemeyer mentioned and the one that I mentioned that were made at Belkin. It's a little different parts. He's instructing here, instructing there. If you tie it all up, maybe the jury wouldn't put it together and come up. Correct. All right. Thank you. Thank you. Mr. Green? Thank you, Your Honors. Lots to talk about. Judge Harris, to your point, Escobar, on its face, demands that you look at the conduct of the actual decision maker. That's an inescapable conclusion. Now, perhaps if Judge Niemeyer, you're correct, assume for the moment that it still has a reasonable person standard, you still can't get rid of the part that Judge Harris pointed to. There must be a reasonable person standard in which the conduct of the decision maker The instructions in this case focus the jury on some trust and the fraudulent statement to obtain money or something of that. And then in describing that, it said there's a mens rea. The intent has to be accompanied by cheating and stealing and explain mistake, negligence doesn't count. And then with materiality explained, and it has to be of significant evidence that would cause a person to make that decision. And it talks about the particular transaction in, that's what the court talked about, the particular transaction before the jury. But Your Honor. I don't quite know whether we're arguing about how many angels are dancing on the head of a pin. We are absolutely not, Your Honor. Because remember, the error that we've assigned is the use of the reasonable person standard, not whether or not they correctly, whether the jury could have identified the decision maker based on the rest of the instructions is really not what we're arguing. We're arguing that under the reasonable person instruction, the jury was permitted and perhaps required to ignore all of our evidence on materiality. That's why it's wrong. It's not wrong because maybe the jury... Material fact is a fact which may be of importance to a reasonable person in making a decision about a particular matter or transaction. This is the abstract. Usually don't instruct a jury with respect to particular parties because you end up directing verdicts with respect to that. So district judges instruct in the abstract. So the material fact, one, would be of importance to a reasonable person in making a decision about the particular matter. The reasonable person in this case is sun trust in deciding whether to do this transaction. Facts or material are important to the matter in question that are made or used with the intent to defraud. Your Honor, that's not right for two reasons. One, the reasonable person standard permitted the jury to disregard evidence that sun trust itself, the decision maker, acted unreasonably, which is in part one way to characterize our argument. We argued extensively. Sun trust practices are what make this information immaterial to them. Under the reasonable person standard, the jury could have looked at all of that evidence and as the government urged them to do, ignored it because it wasn't reasonable. That's fundamental error, Your Honor. It's two different legal standards applied to the same conduct. It's the wrong standard under... Do you argue that Escobar overruled Nader? I do not. Well... Nor did it need to. That has been the law in just about every case that I've ever seen on fraud and materiality. And Nader details the element and how it got there and what Congress intended. They actually made a specific statement that Congress intends the common law background that attended fraud cases and they didn't put the element in the statute. And then they said the common law element is the one quoted in restatement second, which is the reasonable person standard. Your Honor, the language that Nader actually used and that this court adopted in Wynn and in the Anbang case in Pasquantino was the decision maker standard exactly as we proposed it in the instructions. Exactly. We're not talking about your argument. We're talking about whether the district court erred. In other words, you had a different instruction and the district court, we know, can give its own. The question is whether it's giving instructions that are consistent with the law. Well, as I've explained, Your Honor, you get different outcomes under those two different instructions. If Escobar is the standard, if the conduct of the decision maker actually... You're suggesting Escobar and Nader are in combat with each other. I am not. I don't understand that question, Your Honor. Nader establishes a decision maker standard. It doesn't apply it because it doesn't come up in that case as to whether you have to... exactly what evidence matters. Escobar applies it quite explicitly and says what the decision maker did is what mattered. And here's, Your Honors, here's why that has to be right. Here's why it has to be a decision maker-specific standard. You have to think about what materiality is for. Materiality is a limitation on liability. In criminal fraud statutes that don't have a reliance component or a harm component. In the absence of the materiality bulwark, you could conceivably, the federal government could criminalize trivial non-consequential misrepresentations. And Escobar talks about this. That's what materiality is there to do. So if the point of the materiality construct is to prevent criminalization of non-consequential or statements that can't even potentially be consequential to who hears them, then the, forgive me, I lost my train, then it's got to be true, Your Honors, that it's the person who hears it that matters. That's the only person who can determine whether it could be consequential or not. But when you give this instruction in context and in the evidence in the case, it is exactly as you say. But the question is, how do we handle all the circuit court opinions, recent ones, that maintain uniformly that it's an objective reasonable standard? Your Honor. Are they all wrong? And are we wrong in Wolfe? Wolfe was not just a dictum. Wolfe addressed a particular argument and rejected it by citing that standard. Having, well, Your Honor, most of those cases are wrong. Most of them I think are wrong. You mean it just has to go in the bank then and straighten it out because we don't have authority? No, Your Honor. I do not agree that Wolfe addressed this issue. Pardon? I do not agree that Wolfe addressed this issue and that it is part of the holding in Wolfe. I've reviewed the briefs. You disagree with Judge Niemeyer on that? I disagree with Judge Niemeyer on that, respectfully. Your Honor, where were, oh, the other cases, yes. Most of them are wrong because they haven't addressed Escobar. Betz-Gaston didn't address it. There's a couple of cases in the Second Circuit that didn't address it. Wolfe didn't address it. We don't know how those cases come out under what Escobar clarifies is the decision-maker-specific standard. But in fact, Your Honor, to the extent that those cases say that it's a purely objective standard in the sense that all that matters is the intrinsic capacity of the statement to influence, they're wrong under Escobar because that can't survive a standard that the Supreme Court applied unanimously that focused specifically on the conduct of the decision-maker. Remember, what the Supreme Court said expressly, what matters is how it will affect the recipient. It doesn't matter what the statement's intrinsic qualities are. That's what the Supreme Court said. And that's why this instruction has to be wrong. Okay. Thank you, Your Honor. Thank you. We'll adjourn court. Assignment die.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris